Withers, J.
dissenting. The determination, just announced by the majority of the Court, conforms to the expectation I entertained. when I ruled this case on circuit. That expectation arose from evidence (which is to be found in the current of our decisions for a long time past) of a continual tendency towards the object of giving ease to the bail. I am aware that, cautiously and by slow degrees, some relaxation of the stringency of the earliest rules has been admitted in England. But that we have travelled faster and farther in that direction, than have the Courts at Westminster, whence we have been bound to draw our rules and examples on this subject, nobody will doubt, who will take the trouble to gain the information that is to open to him in many books. Petersdorf’s Abrid, vol. 3, Article, “Bail,” will *455 present a very extensive extract of the English law. In some of the States of the Union, the Courts, some with and some without the aid of the Legislature, have cut loose from first principles, and appear to me to be at sea. Occasionally, an obstacle has been interposed with us, but it has always been speedily ovewhelmed; the period when bail shall be deemed fixed, has, from time to time, been set forward, and the means and modes of unfixing them have been multiplied. Believing this temper of our Courts had, by steady steps, already led us to transcend the safe limits of sound judicial guides, I declined to take, on the circuit, what I considered another step in advance (and, according to my judgment, in a wrong direction,) and determined to leave that measure to the wisdom and resolution of a higher tribunal. Such resolution is here taken. I have, however, heard nothing to convince me that I ought to have advised it; and what I fear most is, that it will become only the precursor of another stride. Let us jealously guard against the danger of being seduced, by a mere closet philosophy, warmed up by sentiment, heedless, though it may be amiable, to a warfare upon the remedies of creditors as the persecutors of misfortune. My experience in the real affairs of life has not revealed those scenes of sacrifice with which imagination has often fed a tender sympathy. According to the light that I have on the subject, it is not extravagant to say, that fifty debtors have cunningly eluded justice, by the help of juries and other means, where a single honest insolvent has suffered any degree of oppression from his creditor. I am not, therefore, well inclined to that course of decision which may nibble at the legal means afforded to the creditor for the enforcement of rights, judicially ascertained, until his last resource, after a long chase for his honest dues, shall become completely enervated.
The theory of the law applicable to this question is perfectly clear. The bail engage to render the body of the principal to answer the plaintiff’s judgment, or, in default, to pay the condemnation money. That obligation is exacted when the plaintiff, having signified thus his rightful demand arising from the *456 bail piece, has issued his ca. sa. and the same is returned to the Court at its succeeding term, with the sworn indorsement of the sheriff, that the party, debtor, is not found. Thereupon, the bail bond (as we call it) is ipso facto broken; the bail are fixed; the debt becomes their own. The principal could not, according to the original rules of the English Courts, be afterwards surrendered: a render could not be received in discharge of the absolute obligation that had fallen on the bail. -In process of time that stern rule was found to work harshly. The plaintiff might take out a capias returnable the next day; so that bail had no time to bring in the body. In this particular, we have quite outstripped the English practice in behalf of the bail. Notwithstanding a struggle to the contrary, the bail cannot now be fixed till the end of the return term of ca. sa. against principal, Then came the idea of further indulgence, by order and upon motion, to discharge bail on rendering the body during the return term of process against bail. But it has always been .put on the express ground that render and nothing else must be made then, at the last moment of indulgence, unless at a previous time, to wit, when bail were about to be fixed, or before and in anticipation of it, an order was obtained still further postponing that last moment of indulgence; and for that extraordinary indulgence a cause must be shewn, not only excluding all suspicion of collusion between principal and bail, but testifying that some uncontrollable necessity does prohibit or will prohibit the bail from keeping his bond by a render at the period that fixes him.
On this occasion, for the first time, have I heard the idea advanced, that process against bail is the step which is to quicken their energies; to notify them that their engagement in the bail piece is to be exacted. I had always understood that the ca. sa. performed that office, and that, when issued and lodged with the sheriff, it performed it fully. The language familiar to me, on this point, is the following, (in Clonmondeley vs. Bealing, K. B. 2 Ld. Raym. 1096) to wit; “bail are not bound to render the principal until they know what execution the plaintiff will *457 choose to adopt; whether he will choose to have his body, which he makes appear by suing out his capias, for he might have sued out an elegit or a fi. fa.”
The majority of my brethren hold, in the present case, that a motion for indulgence to the bail should be entertained at the return term of process against them; that notwithstanding there was not the slightest obstacle to the render of the principal at, and for some time after, the term at which the bail became fixed, the indulgence craved should have been granted, because, between the two Courts, when the bail became fixed, and when process against them was returnable and returned, the principal was arrested in another district on a ca. sa. gave bond for keeping the bounds, and took measures to obtain the benefit of the insolvent debtors’s Act; and that such ivas his condition when the motion was made. It is in vain that, against this motion, the plaintiff invokes the accumulated weight of all the authority of the King’s Bench and Common Pleas of England; it is in vain that he points out the default which occurred during the pendency and at the return of the ca. sa.; that he urges the right of the bail to take their principal in Orangeburg district and present his body, instead of their tardy motion, to the plaintiff ; — that he denies that he is in confinement at all since he is at large in that district; that if he must be so considered, still that habeas corpus is at the service of bail, and that there is abundant authority to warrant that writ; that he denies that the principal is in the custody of bail there, because the surety on a prison bounds bond is not bail, and has none of the rights or attributes of bail; that he denies that an escape could be imputed to the sheriff in Orangeburg, any forfeiture incurred by the principal, or liability fixed on the surety there, if the bail here, by habeas corpus, or by the exercise of his rights as bail, were to capture the principal there and render him here, since there would be no voluntary violation of the engagement in Orangeburg; that he argues, and quotes authority to shew, that when the bail became fixed, he took all the risks of failing to render within the period of indulgence; that the bail cannot be *458 helped if his principal dies in the mean time, or is discharged as insolvent; that, nevertheless, the granting of this motion will eifectually protect the bail and place him in the same advantageous position (and the principal in a far better one) as if a render had been made, as it might have béen, at the return of the ca. sa. or after: — all this authority and these considerations are overwhelmed by something supposed to be discovered in the lenity of some American adjudication, although in utter repugnance to the doctrines of those tribunals to whose practice this Court is enjoined, by the authority of positive law, to look for instruction.
I am not prepared for this innovation, and entertain the opinion that if we are to turn from Westminster and look to New York for our lights, in this particular path of duty, we are but in the infancy of progress in this department of law reform. I am more satisfactorily instructed by the sentiments of Judge Ruffin, expressed at page 157, (3 Dev.) as follows: — “I see no reason why such imprisonment (that is for debt) should induce the Court to enter an exoneretur or stop proceedings. For the bail must be taken to have undertaken to produce the principal, unless it was unlawful or impossible. .This is the case with an alien enemy, one transported for a crime, or imprisoned abroad for like matter. But he may always arrest his principal who is imprisoned for debt only by paying that debt. He has engaged to surrender him without any such exception. The plaintiff must lose the benefit of his recovery unless the bail be bound to release the debtor from his confinement abroad; (the party here was imprisoned in Kentucky for debt by the United States) for if the plaintiff were to do so, he could arrest him and bring him within the jurisdiction. The bail alone has that power. But the clear reason is, that the bail contracts to have the debtor forthcoming, and it is no answer to that for him to say, my principal owes another man as well as you. He ought to have seen that beforehand.”
Í apprehend we are greatly diverging from such wholesome views, which favor the notion of still leaving some vitality in a *459 solemn contract; that we are drifting to, if we have not quite reached, the following position: that extraordinary additional favor to principal and slothful hail shall be the polar star; that a sinking debtor shall have enlarged opportunity to waste the remnants, which, if the vigilant creditor (in whom the law rejoices) were let to his full remedies, might be saved, to be devoted to that demand the justice whereof the law has solemnly attested; that hereafter, if a principal, perfectly in the power of bail at the return term of the ca. sa. and during the whole vacation following, should, on some day of the return term of process against bail, get into jail, in Georgia or California, the bail must be forthwith relieved; for this case will be quoted to shew, that the law had superseded the custody of bail, though not before the last moment of what till lately was called the extreme limit of indulgence for the render (now claimed and conceded as a well settled legal right); and however the bail may have speculated, as insurer, upon the ordinations of Providence, and though he shall be allowed no dispensation therefor, yet if the principal shall casually or wilfully, actually or constructively, fall into some other mesh of the law, the bail shall be relieved from the unhappiness of a miscalculation, even from the trouble of an habeas corpus to bring in the body; and by extension of time for that purpose, under order, according to the discretion of an appeal tribunal, a door, closed by the regular operation of law, shall be suddenly opened, and he be relieved from the toils into which he had most voluntarily entered.
A revieAv of the vast multitude of cases, that would give us light in this discussion, I have now no time to make. Something of that kind may be seen in the brief. The inquisitive may consult a great deal of matter germain to our subject in Peterdorf’s Abridgm. and Bacon’s Abridgm. title “ Bail in civil cases.” I am happy to know that, if I have fallen into error, it is now corrected in the particular case; and if the definite and intelligible rule of future practice (so loudly demanded at the bar and supposed to have been so rudely attacked in the circuit decision) has been now afforded and fortified by the Court, I *460 shall have my full share of the benefit thereof as an official guide in future.
Wardlaw, J. concurred.

Motions granted.